UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BRIAN D. KELLY,<br><br>PLAINTIFF,<br><br>V.<br><br>ADAM WRIGHT, individually and as an employee of CONSERVE-ARM, and CONSERVE-ARM, a New York corporation,<br><br>DEFENDANTS. | CIVIL NO. 08-5991 (JRT/AJB)<br><br>REPORT & RECOMMENDATION |

Brian D. Kelly, 3926 Tyler Street, Columbia Heights, MN 55421 (pro se litigant);

Christopher R. Morris, Michael A. Klutho, and David A. Turner, Bassford Remele, PA, 33 South 6th Street, Suite 3800, Minneapolis, MN 55402-3707 (for Adam Wright and ConServe-ARM).

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Arthur J. Boylan, on Brian D. Kelly's Motion to Terminate Settlement, Reverse Dismissal Order and Set Trial Schedule [Docket No. 10], Kelly's Motion for Sanctions of $16,500.00 for Gross Financial Dereliction [Docket No. 13], Kelly's Motion to Forfeit Settlement Funds Paid in Settlement [Docket No. 15], and Adam Wright and ConServe-ARM's Motion for Sanctions [Docket No. 20]. Kelly's Motions were referred to this Court for proposed findings of fact and a recommendation for disposition. [Docket No. 19.] A hearing was held on the motion on September 9, 2010. Kelly appeared pro se. Michael A. Klutho appeared on behalf of Adam Wright and ConServe-ARM.

1

Based upon the record, memoranda, and oral arguments, **IT IS HEREBY RECOMMENDED** that Kelly's Motion to Terminate Settlement, Reverse Dismissal Order and Set Trial Schedule [Docket No. 10], Kelly's Motion for Sanctions of $16,500.00 for Gross Financial Dereliction [Docket No. 13], and Kelly's Motion to Forfeit Settlement Funds Paid in Settlement [Docket No. 15] be **DENIED,** and Adam Wright and ConServe-ARM's Motion for Sanctions [Docket No. 20] be **DENIED**.

## II. BACKGROUND

In November 2008, Movant Brian D. Kelly's case was removed to this Court from the District Court for the Third Judicial District of the State of Minnesota. [Docket No. 1.] Kelly's Complaint asserted four claims arising out of Adam Wright and ConServe-ARM's debt collection efforts: (1) "debt collection prohibited practices"; (2) negligence;[1] (3) invasion of privacy; and (4) breach of contract. Kelly alleged that he suffered damages as result of Adam Wright and ConServe-ARM's actions and described those damages as follows: "[Adam Wright and ConServe-ARM's] intentional infliction of substantial and enduring mental duress had a direct effect of causing Kelly loss of income derived from commission sales"; "Kelly began having sleep problems including insomnia, night terrors, profuse sweating and disrupted sleep as a direct result of the frequency and persistence of [Adam Wright and ConServ-ARM's] actions"; "Kelly's work suffered because of the emotional duress and mental distress resulting from the frequency and persistence of the collection actions of [Adam Wright and ConServ-ARM]"; and "Kelly and his family suffered economic and emotional damage by [Adam Wright and ConServ-ARM] acting outside legal authority."

---

[1] Kelly's negligence claim seems to have been based upon the collection efforts of Adam Wright and ConServe-ARM's acts of hiring, training, retaining, and supervising Adam Wright.

A pretrial conference was set for January 27, 2009. Prior to the conference, Kelly submitted a Rule 26(f) Report where he summarized the damages that he was seeking. [Docket No. 6.] In addition to claims of damages totaling $24,000.00 for alleged violations of the "Debt Collection Act," Kelly sought damages totaling $23,429.47 for "actions which resulted in harassment and stalking," "[c]ollection calls determined to be obscene telephone calls," and additional damages, "including additional amounts for defendants actions which proximately caused Kelly damages; for compensatory damages; for punitive and/or exemplary damages; and pre and/or post judgment interest."

Both parties attended the pretrial conference on January 27, 2009. At the conference, the parties reached a settlement agreement. [Docket No. 7.] The settlement terms were stated on the record and the record was sealed. The settlement agreement was later reduced to writing, which set forth that ConServe-ARM would pay to Kelly the sum of $5,500.00 in consideration for the discharge of Kelly's claims. The settlement agreement also included the following language: "As an additional term of settlement, the undersigned further agree that they will not reveal or discuss in any way the facts of or terms of the settlement of this matter with any other person or entity, as more fully set forth in the Confidentiality Agreement executed by the undersigned and their counsel as part of this settlement agreement." ConServe-ARM did not admit any liability within the settlement agreement. On February 6, 2009, the parties filed a Stipulation of Dismissal with Prejudice. [Docket No. 8.] On February 10, 2009, the Honorable John R. Tunheim, United States District Court Judge for the District of Minnesota, ordered that judgment be entered, dismissing the Complaint on its merits with prejudice and without costs, disbursements or attorney's fees to any party. [Docket No. 9.]

ConsServe-ARM sent Kelly a check for $5,500.00 in February 2009. Later in February 2009, ConServe-ARM sent Kelly an Internal Revenue Service (IRS) Form 1099-MISC listing $5,500.00 as "Nonemployee compensation" paid by ConServe-ARM to Kelly. Kelly received the IRS Form 1099-MISC sometime in February 2009. [*See* Docket No. 12-1.] Kelly sent letters to ConServe-ARM asking them to withdraw their IRS Form 1099-MISC. ConServe-ARM did not respond to Kelly's requests.

On July 20, 2010, Kelly filed his Motion to Terminate Settlement, Reverse Dismissal Order and Set Trial Schedule. Kelly contends that ConServe-ARM breached the settlement agreement because after paying Kelly $5,500.00, ConServe-ARM sent him an IRS Form 1099-MISC. In support of his motion, Kelly filed an unsealed affidavit [Docket No. 12] to which he attached a copy of the confidential settlement agreement, a copy of the settlement check from ConServe-ARM to Kelly, and a copy of the IRS Form 1099-MISC. [Docket No. 12-1.]

On July 21, 2010, Kelly filed his Motion for Sanctions of $16,500.00 for Gross Financial Derelictions. [Docket No. 13.] Kelly filed an affidavit in support of his motion in which he describes receiving the IRS Form 1099-MISC from ConServ-ARM. [Docket No. 15.]

Also on July 21, 2010, Plaintiff filed his Motion to Forfeit Settlement Funds Paid in Settlement. [Docket No. 15.] In his memorandum in support of his motion, he again describes the IRS Form 1099-MISC that he received from Defendants and he states the he "seeks [a] Court Order forfeiting $5,500.00 settlement paid." [Docket No. 16.] Plaintiff also filed an affidavit, describing the settlement agreement reached between the parties and the parties actions with respect to the IRS Form 1099-MISC. [Docket No. 17.]

On August 27, 2010, Adam Wright and ConServ-ARM filed a Motion for Sanctions. [Docket No. 20.] Adam Wright and ConServ-ARM also filed a memorandum in opposition to Kelly's motions. [Docket No. 26.]

## III. DISCUSSION

### 1. The tax treatment of the settlement between the parties is not a basis to grant any of Kelly's motions.

The Federal Rule of Civil Procedure 60(b) sets forth the conditions and procedures for obtaining relief from a final judgment.[2] Rule 60(b) states:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "A motion under Rule 60(b) must be made within a reasonable time . . . ." *Id.* at 60(c)(1).

In his Memorandum in Support of his Motion to Terminate Settlement, Reverse Dismissal Order and Set Trial Schedule, Kelly contends that the "judgment is void" because ConServ-ARM sent Kelly the IRS Form 1099-MISC, which Kelly contends breached the

---

[2] Kelly's motion cites the Minnesota Rules of Civil Procedure as the basis for his motion. The Minnesota Rules of Civil Procedure do not govern this motion.

5

settlement agreement.³ Kelly seems to be bringing the present motion under Rules 60(b)(5) and 60(b)(6). For the reasons set forth below, Kelly's Motion to Terminate Settlement should be denied.

Kelly does not argue that ConServe-ARM breached any express provision of the settlement agreement. The language of the settlement agreement in this matter is unambiguous. The settlement agreement does not forbid ConServe-ARM from filing an IRS Form 1099-MISC reporting any income to Kelly. Nor does the settlement agreement contain any statement regarding the tax treatment of the settlement payment from ConServe-ARM to Kelly.

Whether ConServe-ARM's payment to Kelly should have been reported on an IRS Form 1099-MISC turns on whether ConServe-ARM should have concluded that the settlement payment constituted "gross income" for Kelly given the requirements of the tax code and the facts in the present case. For tax purposes, "gross income means all income from whatever source derived." 26 U.S.C. § 61(a). But, gross income does not "include the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness." *Id.* at § 104(a)(2). Because of the exclusion of "damages . . . on account of personal physical injuries or physical sickness" from gross income, the instructions for IRS Form 1099-MISC states that payment "damages . . . on account of personal physical injuries or physical sickness" need not be reported. But the instructions also explain that "[d]amages received on account of emotional distress, including physical symptoms such as insomnia, headaches, and stomach disorders, are not considered received for a physical injury or physical sickness and are

---

³ Kelly also cites to a state criminal statute, Minn. Stat. § 609.748; the Minnesota Constitution; 42 U.S.C. § 1983; and *Griswold v. Connecticut*, 381 U.S. 479 (1965). (Kelly's Mem. 4, July 20, 2010.) These legal authorities have no relevance to the underlying case or Kelly's present claim for relief.

reportable . . . ." IRS Pub. Instr. 1099-MISC (2008); IRS Pub. Instr. 1099-MISC (2009). If the facts support that ConServe-ARM should have concluded that the settlement payment would constitute "gross income" for Kelly, then ConServe-ARM was required by statute to provide the IRS with an information return (i.e., IRS Form 1099-MISC) setting forth the payment to Kelly. 26 U.S.C. § 6041(a). ConServe-ARM was also required by statute to furnish a copy of the information return to Kelly. *Id.* at 6041(d). ConServe-ARM could have been subject to monetary penalties for failure to report the payment to Kelly in an IRS Form 1099-MISC. *Id.* at 6712(a).

ConServe-ARM reasonably interpreted the tax code when it determined that Kelly should receive an IRS Form 1099-MISC for the settlement payment. Assuming arguendo that the settlement payment at issue was compensation for Kelly's damages, there is no support in the record that Kelly's damages included "personal physical injuries or physical sickness."[4] 26 U.S.C. § 104(a)(2). Kelly's Complaint does not allege any personal injury or physical sickness. To the contrary, Kelly asserts "mental duress" with the only physical symptom being insomnia. And no claim in Kelly's Complaint could result in physical injury or physical sickness. Furthermore, his Rule 26(f) Report does not assert any claim for damages based upon personal injuries or physical sickness. Thus, it was reasonable for ConServe-ARM to issue Kelly an IRS Form 1099-MISC.[5]

---

[4] It is questionable whether the settlement payment at issue constitutes compensation for damages given that it is expressly designated as consideration for discharge of Kelly's claims and ConServe-ARM admitted no fault.

[5] The issuance of an IRS Form 1099-MISC form is not a definitive determination that the amounts described therein are "gross income" as defined by statute. The issuance of an IRS Form 1099-MISC is another party's determination that the amounts described therein are "gross income." The IRS provides a means for a taxpayer to dispute the characterization of amounts described on an IRS Form 1099-MISC as "gross income." *See* IRS Publ. 1, *Your Rights as a Taxpayer* (2005) ("If you disagree with us about the amount of your tax liability or certain collection actions, you have the right to ask the Appeals Office to review your case. You may also ask a court to review your case."). Thus, to the extent that Kelly disputed the

Kelly contends that he could not have anticipated ConServe-ARM's act of sending him an IRS Form 1099-MISC. This Court disagrees. A settlement agreement need not expressly articulate the tax consequences of the agreement in order for those consequences to be foreseeable. *Cf. Ward v. American Family Life Assur. Co. of Columbus (AFLAC)*, 444 F. Supp.2d 540, 544 (D.S.C. 2006) (holding that there was no breach of a settlement agreement where the defendant sent the plaintiff and IRS Form 1099-MISC following the payment of the settlement amount)*; Dusé v. International Business Machines Corporation,* 252 F.3d 151, 161 (2d Cir. 2001) (holding that the defendant's decision to file an IRS Form 1099-MISC did not breach the settlement agreement). One of the axiom's of common law in the United States is that "ignorance of the law is no defense[,] . . . whether the law be a statute or a duly promulgated and published regulation." *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 563, 91 S. Ct. 1697, 1701 (1971). As the above analysis demonstrates, Kelly was presumed to be on notice that the settlement payment he received may have tax consequences for ConServe-ARM and Kelly. Thus, this Court concludes that Kelly's claim that he did not anticipate tax consequences of the settlement payment at the time of the settlement is an invalid basis for vacating a final judgment under Rules 60(b)(5) and 60(b)(6).

ConServe-ARM also asserts that Kelly's motion should be denied because Kelly did not bring his motion within a reasonable time. This Court agrees. Kelly received the IRS Form 1099-MISC sometime in February 2009. He did not seek any relief from this Court until July 2010. This 16 month delay between receiving the objectionable tax form and seeking relief is unreasonable. Therefore, this Court concludes that the Kelly's Motion should also be denied

---

characterization of the settlement amount paid to him as "gross income," Kelly's dispute is with the IRS, not with ConServe-ARM.

because he failed to bring a Rule 60(b) motion "within a reasonable time." Fed. R. Civ. P. 60(c)(1).

Kelly has asserted no other basis for relief from the judgment. For the reasons set forth above, this Court recommends that Kelly's Motion to Terminate Settlement, Reverse Dismissal Order and Set Trial Schedule [Docket No. 10] be denied.

### 2. Kelly's other motions should be denied accordingly.

This Court recommends that Kelly's Motion for Sanctions of $16,500.00 for Gross Financial Dereliction [Docket No. 13] and Motion to Forfeit Settlement Funds Paid in Settlement [Docket No. 15] be denied because they share the same argument as his Motion to Terminate and are contingent upon the Court granting his Motion to Terminate. Furthermore, this Court recommends that Kelly's Motion for Sanctions of $16,500.00 for Gross Financial Dereliction and Motion to Forfeit Settlement Funds Paid in Settlement be denied because Kelly has failed to follow the appropriate procedures in order to bring these motions and Kelly is not entitled to relief on these motions.

Pro se litigants are "not excused from complying with substantive and procedural law." *Brown v. Frey*, 806 F.2d 801, 804 (8th Cir. 1986). Kelly's Motion for Sanctions of $16,500.00 for Gross Financial Dereliction is premised on Federal Rules of Civil Procedure 9 and 11. Kelly's Motion should be denied for the following reasons: First, Rule 9 neither provides a procedure for seeking sanctions nor any entitlement to sanctions. Second, Rule 11 sanctions are only available for violations that occur within "a pleading, written motion, or other paper" that is presented to the court. Fed. R. Civ. P. 11(b). Kelly has not identified any "pleading, written motion, or other paper" that Adam Wright or ConServe-ARM presented to the court that gives rise to his motion. Third, Federal Rule of Civil Procedure 11(c) mandates that the party who

allegedly violated Rule 11 must be served with the opposing party's Rule 11 motion at least 21 days prior to the filing of said motion in order to provide the party who allegedly violated Rule 11 with the opportunity to correct any violation. Kelly's affidavit does not provide any factual support that Kelly served Adam Wright or ConServe-ARM with his Motion for Sanctions of $16,500.00 for Gross Financial Dereliction at least 21 days before he filed the motion. Therefore, for all of the reasons stated, this Court recommends that Kelly's Motion for Sanctions of $16,500.00 for Gross Financial Dereliction [Docket No. 13] be denied.

Likewise, Kelly's Motion to Forfeit Settlement Funds Paid in Settlement [Docket No. 15] should be denied. Kelly's Motion to Forfeit Settlement Funds Paid in Settlement is premised upon Rules 8, 9, and 11. Rule 9 is inapplicable to a motion for forfeiture of settlement funds and Kelly has failed to meet his burden under Rule 11 to show that Adam Wright or ConServe-ARM provided any sanctionable document to the court or were served with Kelly's Motion to Forfeit Settlement Funds Paid in Settlement prior to Kelly filing said motion. Furthermore, Rule 8 provides "General Rules of Pleading" and has no provisions entitling Kelly to forfeiture of settlement funds. Therefore, for the reasons set forth herein, this Court recommends that Kelly's Motion to Forfeit Settlement Funds Paid in Settlement [Docket No. 15] be denied.

### 3. Adam Wright and ConServe-ARM are not entitled to Rule 11 sanctions.

There is no doubt that Kelly's Motions were frivolous and unwarranted by existing law. There is no question that Kelly breached the confidential settlement agreement by publicly filing a copy of the agreement. Nevertheless, this Court concludes that Adam Wright and ConServe-ARM are not entitled to Rule 11 sanctions for the reasons set forth below.

ConServe-ARM's Motion for Sanctions suffers from two deficiencies. First, the Affidavit filed in conjunction with ConServe-ARM's Motion for Sanctions does not support that Kelly

was every served with a copy of ConServe-ARM's Motion for Sanctions prior to the filing of said motion. The Affidavit states: "Attached hereto as Exhibit A is a true and correct copy of a letter to Plaintiff Brian D. Kelly from David A. Turner dated August 9, 2010." [Docket No. 23.] The Affidavit includes a copy of the letter described in the affidavit. [Docket No. 23-1.] The letter warns that Kelly's failure to withdraw his motions may compel ConServe-Arm to file a motion for sanctions. But, even assuming that the letter constitutes sufficient notice under Rule 11, the affidavit is deficient because there is no statement evincing that this letter was ever sent to Kelly. Second, even if this Court presumed that the letter from David A. Turner was sent to Kelly, the letter is dated is less than 21 days prior to the date on which ConServe-ARM's filed its Motion for Sanctions. Therefore, Kelly did not have 21 days warning to withdraw his filings. Therefore, this Court cannot recommend sanctions (based upon ConServe-ARM's Motion for Sanctions) where ConServe-ARM has failed to comply with the requirements of Rule 11.

## IV. PROPOSED FINDINGS

Based upon the record, memoranda, and oral arguments, this Court submits the following **PROPOSED FINDINGS** that:

1. Following the confidential settlement agreement reached between Movant Brian D. Kelly and ConServe-ARM and Adam Wright, ConServe-ARM paid to Brian D. Kelly the amount of $5,500.00.

2. Following payment of the $5,500.00, Brian D. Kelly received an IRS Form 1099-MISC from ConServe-ARM documenting a payment to Brian D. Kelly of $5,500.00.

**V.     RECOMMENDATION**

Based upon the record, memoranda, and oral arguments, **IT IS HEREBY RECOMMENDED** that:

1. Kelly's Motion to Terminate Settlement, Reverse Dismissal Order and Set Trial Schedule [Docket No. 10] be **DENIED**;

2. Kelly's Motion for Sanctions of $16,500.00 for Gross Financial Dereliction [Docket No. 13] be **DENIED**;

3. Kelly's Motion to Forfeit Settlement Funds Paid in Settlement [Docket No. 15] be **DENIED**; and

4. Defendant's Motion for Sanctions [Docket No. 20] be **DENIED**.


Dated:     9/21/10

    s/ Arthur J. Boylan
Chief Magistrate Judge Arthur J. Boylan
United States District Court


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **October 7, 2010**.
.